UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHELLE DUNMORE,

    Plaintiff,

    v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

    Defendant.

Civil Action No. 05-276 (CHK)

**MEMORANDUM OPINION**
(October 31, 2006)

Before the Court are Plaintiff's Motion for Judgment of Reversal and Defendant's Motion

for Judgment of Affirmance, respectively, of the decision of an Administrative Law Judge

("ALJ") denying Social Security Income Benefits ("SSI") to Plaintiff, pursuant to Title XVI of

the Social Security Act, 42 U.S.C. §§ 416(I), 1381, 1382.  Upon review of the parties' briefs, the

administrative record, and the relevant case law, the Court shall grant Plaintiff's motion to

reverse the judgment on the issue of the conflict between the *Dictionary of Occupational Titles*

and the vocational expert testimony, deny Defendant's motion to affirm the judgment, and

remand the case to the Social Security Administration for rehearing pursuant to 42 U.S.C. §

405(g) consistent with this opinion.

**I: BACKGROUND**

Plaintiff Michelle Dunmore petitioned the Social Security Administration for SSI

pursuant to Title XVI of the Social Security Act on January 23, 2002.  Admin. Record ("A.R.")

at 89–92.  Plaintiff is a female resident of Washington, DC with a 12th grade education, *id.* at 16;

at the time of her administrative hearing, Plaintiff was 38 years old and had no "vocationally

relevant past work experience," *id.* at 15.   According to Plaintiff's petition, her disability began

on June 10, 2000, and stems from her cancer of the cervix.  *Id.* at 89–92, 101.   Plaintiff was

diagnosed with cervical cancer in April 2000, *id.* at 550–52, and subsequently underwent

radiation treatments between July and September of 2000, *id.* at 172.   Plaintiff experienced

complications resulting from her radiation treatment, for which she sought treatment in August

2001 and October 2001.   *Id.* at 553-55.   In October 2001, Plaintiff was diagnosed with hematuria

and radiation cystitis and underwent emergency surgery.   *Id.* at 145-46.   Plaintiff returned to the

hospital in February of 2002, where she was diagnosed with severe anemia.   *Id.* at 140.   Plaintiff

received a blood transfusion, and was discharged from the hospital after three days of treatment.

*Id.* at 139, 141.

Plaintiff was hospitalized again from July 17-23, 2002, following complaints of

incontinence and enlarged groin lymph nodes.   *Id.* at 172-74.   During this period, Plaintiff was

treated by Dr. Jonathan Cosin. *Id.* at 165-67; 172-74.   In August of 2002, Plaintiff underwent

surgery by Dr. Cosin for definitive urinary diversion (essentially the creation of an "artificial

bladder" that Plaintiff empties through catheterization).   *Id.* at 159, 172.   Following an

examination on August 26, 2002, Dr. Cosin described Plaintiff as cancer free, "post operative"

and "improving," although requiring two to three months of long-term rehabilitative care.   *Id.* at

158.   Plaintiff returned to the hospital on August 31, 2002, complaining that she had produced no

urine for three days, and was diagnosed with a urinary tract infection, treated, trained on the

proper use of her continence diversion, and discharged on September 6, 2002.   *Id.* at 560–61.

During follow-up examinations in the fall of 2002, Plaintiff reported problems with her

diversion, some occasional urinary leakage, and complained of some constipation.  *Id.* at 207–08.

However, Dr. Cosin's reports of these examinations describe Plaintiff as alert, cooperative, and

oriented, with appropriate mood and affect, and demonstrating no evidence of depression,

confusion, or anxiety.  *Id.* at 210.  Subsequent routine examinations in January and August of

2003 indicated that Plaintiff was doing well, displaying minimal pelvic symptoms from radiation

therapy but displaying no evidence of cancer.  *Id.* at 216.  Plaintiff's condition remained

unchanged through August 13, 2003, the date of the last visit of record.  *Id.* at 210-18.

　　Plaintiff's claim for SSI was denied initially and upon reconsideration.  *Id.* at 49–51, 52,

57–59.  Thereafter, Plaintiff requested a hearing before an ALJ on January 19, 2003.  *Id.* at 60.

Her hearing before an ALJ was held on May 3, 2004.  *Id.* at 23.  At the hearing, the ALJ apprised

Plaintiff of her right to representation, and Plaintiff chose to proceed without a representative.

*Id.* at 25-26.  During the hearing, testimony was taken from Plaintiff, a witness, and an

independent vocational expert.  *Id.* at 23–42.  Plaintiff testified that she needed to use the

restroom every 3 to 4 hours to self-catheterize, that this process took approximately 30 minutes,

and that she did not "feel comfortable" using the restroom outside of her home due to "mental"

issues with "the outside."  *Id.* at 32-33.[1]

　　In a decision dated May 19, 2004, the ALJ denied Plaintiff's requested SSI, finding that

Plaintiff was not disabled within the meaning of Title XVI of the Social Security Act.  *Id.* at 12-

---

[1] As background, the Court notes that the record reveals that Plaintiff lives with two children and takes care of them on a daily basis, including talking with them and getting them ready for school.  A.R. at 124-26.  Plaintiff listens to the radio, watches television, visits with friends and family, goes to the store by herself and attends church on Sundays.  *Id.*  However, according to Plaintiff, she does not participate in household chores, her child cooks for her, and she "can't enjoy too much with her child."  *Id.*

22.  In making this determination, the ALJ followed the five-step process used to determine disability under Title XVI of the Social Security Act.  See 20 C.F.R. § 416.920(a)(4) (listing the sequential evaluation process).  At Step One, the ALJ determined that Plaintiff 'has not engaged in substantial gainful activity since her alleged onset date" of disability, June 10, 2000.  A.R. at 16.  At Step Two, the ALJ found that the Plaintiff's impairments, "carcinoma of cervix - status post chemotherapy and radiation therapy vesicovaginal fistula - paracervical fibrosis secondary to radiation and depression," were severe within the meaning of the SSA regulations.  *Id.* at 17; *see also* 20 C.F.R. § 416.920 (defining a severe impairment as one that limits a person's ability to perform basic work activities).  At Step Three, the ALJ found that Plaintiff's severe impairment did not match any of the impairments listed in Appendix 1, Subpart P, Regulation No.4, and that as a result, Plaintiff was not presumed disabled.  A.R. at 17–18; *see also* 20 C.F.R. § 416.920(a)(4)(iv) (requiring a finding of disability where a severe impairment "meets or equals" a listed impairment).

The ALJ then concluded, based on a review of Plaintiff's symptoms "including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," that Plaintiff retained the residual functional capacity ("RFC") to "perform a reduced range of light level work."  A.R. at 18.  The ALJ further found that Plaintiff had to "avoid climbing of ropes, ladders and scaffolds," but could "perform other postural movements, such as stooping on an occasional basis," and noted that Plaintiff's "work area should include a close proximity to a restroom."  *Id.*  At Step Four, the ALJ found that Plaintiff had no relevant past work.  *Id.* at 19.  Finally, at Step Five, relying on the impartial vocational expert ("VE") and the Medical-Vocational Guidelines, the ALJ concluded that

Plaintiff was able to do other work that existed in significant number in the national economy, including office helper (65,000 nationally and 1,800 regionally), stock checker (40,000 nationally and 400 regionally, and non-postal mail clerk (60,000 nationally and 700 regionally). *Id.* at 20. As such, the ALJ concluded that Plaintiff "is capable of making a successful adjustment to work that exists in significant numbers in the national economy""and that a "finding of 'not disabled' is therefore reached." *Id.* at 20–21. Plaintiff appealed this decision on July 12, 2004, *id.* at 9, and the Appeals Counsel affirmed the ALJ's decision on December 10, 2004, *id.* at 4-6. Having fully exhausted her administrative remedies, Plaintiff filed the instant action seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

Plaintiff's Motion for Judgment of Reversal identifies four main flaws in the ALJ's decision. First, Plaintiff asserts that the ALJ failed to support his conclusion regarding her RFC with the proper narrative analysis and to perform the required "function by function" assessment of her ability to perform exertional and non-exertional work. Pl.'s Mot. for J. of Rev. at 10. Second, Plaintiff argues that in performing the RFC analysis, the ALJ improperly ignored pertinent evidence. *Id.* at 10-12. Third, Plaintiff complains that the ALJ improperly relied upon testimony from the VE because he failed to inquire of the VE whether her testimony was consistent with the *Dictionary of Occupational Titles* (the "DOT"), failed to "recognize obvious conflicts" between the VE's testimony and the DOT, and failed to explain how such conflicts were resolved. *Id.* at 12-18. Finally, Plaintiff claims that the ALJ was required to develop the administrative record with respect to Plaintiff's medical condition in the nine months prior to the ALJ's decision as well as Plaintiff's assertions that she suffered from depression. *Id.* at 18-22.

Defendant makes a Motion for Judgment of Affirmance and disputes Plaintiff's

characterization of the ALJ's decision.  Defendant asserts that the ALJ properly assessed

Plaintiff's RFC by considering Plaintiff's functional abilities and limitations as well as all

relevant evidence, properly relied on the testimony of the VE, and was not required to develop

the administrative record further because the evidence was adequate to determine the issue of

disability.  *See generally* Def.'s Mot. for J. of Aff.  Plaintiff rebutted each of Defendant's

arguments in her Response to Defendant's Motion for Judgment of Affirmance.

## II: LEGAL STANDARD

"In a disability proceeding, the ALJ 'has the power and the duty to investigate fully all

matters in issue, and to develop the comprehensive record required for a fair determination of

disability.'"  *Simms v. Sullivan*, 877 F.2d 1047, 1050 (D.C. Cir. 1989) (quoting *Diabo v. Sec'y of

HEW*, 627 F.2d 278, 281 (D.C. Cir. 1980)).  The Social Security Act defines "disability" as an

"inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §

423(d)(1)(A) (2004).  Inability to engage in substantial gainful activity not only includes the

individual's inability to do his previous work, but requires as well an inability, "considering his

age, education, and work experience, [to] engage in any other kind of substantial gainful work

which exists in the national economy, regardless of whether such work exists in the immediate

area in which he lives, or whether a specific job vacancy exists for him, or whether he would be

hired if he applied for work."  *Id.* at § 423(d)(2)(A).  In making this determination, the ALJ is to

consider (1) medical data and findings, (2) expert medical opinions, (3) subjective complaints,

and (4) the plaintiff's age, education, and work history; however, "[t]he expert opinions of a

treating physician are binding on the fact finder unless contradicted by substantial evidence to the contrary." *Davis v. Heckler*, 566 F. Supp. 1193, 1196 (D.D.C. 1983) (citing cases).

A court will not disturb the determination of the Commissioner if it is based on substantial evidence in the record and the correct application of the relevant legal standards. 42 U.S.C. §§ 405(g), 1383(c); *Butler v. Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted). While a scintilla of evidentiary support is insufficient, the test can be satisfied by "something less than a preponderance of the evidence." *Fla. Mun. Power Agency v. FERC*, 315 F.3d 362, 365-66 (D.C. Cir. 2003). In reviewing an administrative decision, a court may not determine the weight of the evidence, nor substitute its judgment for that of the Secretary if her decision is based on substantial evidence. *Butler*, 353 F.3d at 999; *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Instead, the reviewing court must carefully scrutinize the entire record to determine whether the Secretary, acting through the ALJ, has analyzed all the evidence and has sufficiently explained the weight she has given to obviously probative material. *Id.* "Because the broad purposes of the Social Security Act require a liberal construction in favor of disability, the court must view the evidence in the light most favorable to the claimant." *Martin v. Apfel*, 118 F. Supp. 2d 9, 13 (D.D.C. 2000) (citing *Davis v. Shalala*, 862 F. Supp. 1, 4 (D.D.C. 1994)).

The reviewing court must also determine whether credible evidence was properly considered. *Id.* (citing *Dionne v. Heckler*, 585 F. Supp. 1055 (D.Me. 1984)). The ALJ's final decision must contain "a statement of findings and conclusions, and the reasons or the basis therefor, on all material issues of fact, law, or discretion presented on the record." 5 U.S.C. §

557(c).  Importantly, an ALJ cannot merely disregard evidence which does not support his

conclusion.  *Dionne*, 585 F. Supp. at 1060.  A reviewing court should not be left guessing as to

how the ALJ evaluated probative material, and it is reversible error for an ALJ to fail in his

written decision to explain sufficiently the weight he has given to certain probative items of

evidence.  *Martin*, 118 F. Supp. 2d at 13 (citing *Davis*, 862 F. Supp. at 2).

### III: DISCUSSION

To qualify for SSI, Plaintiff must demonstrate that she cannot engage in "substantial

gainful activity by reason of any medically determinable physical . . . impairment," and that the

physical impairments prevent her from engaging in her previous work, or any other kind of

"substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(1)-(2); *id.* §

1382c(a)(3).  By satisfying both conditions, a claimant is "disabled" for purposes of the Social

Security Act.

To decide whether a claimant such as Plaintiff has proven she is disabled, the ALJ must

use a five-step sequential analysis.  20 C.F.R. §§ 404.1520, 416.920.  These steps include a

determination of (1) current work activity; (2) severity of the impairments; (3) whether the

impairment meets or equals a listed impairment; (4) if the impairment prevents claimant from

doing past work; (5) if the impairment prevents her from doing other work upon consideration of

the RFC.  *Id*.  Each step requires a detailed inquiry into the evidence presented, based on

additional regulations as well as Social Security Rulings ("SSR").  The Court will identify the

relevant inquiry in a manner which mirrors the way Plaintiff sets out her motion for judgment of

reversal, rather than delve into a maze of these more detailed requirements here.  It is sufficient at

present to indicate that Plaintiff challenges the ALJ's application of this sequence to her claim.

For the reasons set forth below, the Court finds that the ALJ improperly applied the law by

failing to resolve a conflict between the DOT and the VE evidence.  Therefore, the Court grants

Plaintiff's motion for a judgment of reversal and remands this case to the ALJ for rehearing on

this narrow issue of the conflict between the DOT and the VE evidence consistent with this

decision.

> A.      Assessment of Plaintiff's Residual Function Capacity ("RFC")

To make a determination under Steps Four and Five of the disability sequence, which

involve an inquiry into the claimant's ability to return to past work and whether future

employment of any variety is possible, *see* 20 C.F.R. §§ 404.1520, 416.920, the ALJ must engage

in an RFC analysis.  20 C.F.R. §§ 404.1545, 416.945; SSR 96-8p, *Policy Interpretation Ruling*

*Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims*, 1996 WL 374184 at

*2 (S.S.A. July 2, 1996).  An RFC is "an administrative assessment of the extent to which an

individual's medically determinable impairment(s), including any related symptoms, such as

pain, may cause physical or mental limitations or restrictions that may affect his or her capacity

to do work-related physical or mental activities."  SSR 96-8p, 1996 WL 374184 at *2.  The ALJ

must explain how he considered and resolved ambiguities in the record with regard to the

ultimate RFC decision.  *Butler*, 353 F.3d at 1000.

Plaintiff makes two main arguments concerning the ALJ's assessment of her RFC.  First,

Plaintiff asserts that, while the ALJ did set forth a conclusive assessment of Plaintiff's RFC, he

failed to perform the required "function by function" analysis and set forth a narrative discussion

describing how the evidence supported each conclusion.  Pl.'s Mot. for J. of Rev. at 9.  Second,

Plaintiff argues that the ALJ ignored pertinent evidence – specifically a report in the record by

Plaintiff's treating physician, Dr. Charles Boice, and Plaintiff's testimony regarding the time it

takes her to self-catheterize – in assessing Plaintiff's RFC.  *Id.* at 10-12.  The Court will address

each of Plaintiff's arguments regarding the ALJ's RFC assessment in turn.

     *1.     Failure to Include a Narrative Discussion*

In assessing Plaintiff's RFC, the ALJ found that Plaintiff retains the RFC "to perform a

reduced range of light level work," that her work area should be in "close proximity to a

restroom," and that she should be "limited to simple routine unskilled tasks."  A.R. at 18.  The

Court finds that each of these conclusions is adequately supported in the record and afforded

proper analysis in the ALJ's opinion.

The Social Security Rulings require that an ALJ's RFC assessment include a narrative

discussion describing how the evidence supports each conclusion comprising the RFC, SSR 96-

8p, 1996 WL 374184, *7, and also identify the individual's functional limitations or restrictions

and assess his or her work-related ability on a function-by-function basis, *id.* at *7.[2]  However, if

there are no allegations or objective evidence of limitations or restrictions on a particular

functional capacity, the ALJ must consider the individual to have no limitation with respect to

that functional capacity.  *See id.* at *1.  Plaintiff does not assert that she alleged any restrictions

on any particular functional capacities.  While Plaintiff does assert that a Medical Evaluation

Report prepared by a Dr. Boice indicated limited capacities to walk, stand, stoop, kneel, lift,

reach, push, and pull, Pl.'s Resp. to Def.'s Mot. for J. of Aff. (hereinafter "Pl.'s Resp.") (citing

---

    [2] SSR 96-8p states that an RFC must include an assessment of the functions identified in
20 C.F.R. §§ 404.1545 and 416.945, SSR 96-8p, 1996 WL 374184 *7, which specifically include
"sitting, standing, walking, lifting, carrying, pushing, pulling or other physical functions
(including manipulative or postural functions, such as reaching, handling, stooping, or
crouching)," 20 C.F.R. § 404.1545(b) (2005).

A.R. at 133-34), as discussed below, this report is consistent with the medical reports to which the ALJ specifically cites in support of his conclusions regarding Plaintiff's RFC.

In addition, the ALJ did support each of the major conclusions comprising his RFC assessment with a narrative discussion and evidence from the record.  First, with regard the ALJ's conclusion that Plaintiff retained the RFC "to perform a reduced range of light work," the ALJ's decision expressly relies on an RFC assessment performed by Dr. Isabel Rico, a State agency physician, in which she found Plaintiff to have exertional limitations.  *Id*. at 18.  The ALJ's opinion also extensively discusses reports by Dr. Jonathan Cosin dated August 26, 2002 and August 13, 2003, and notes Plaintiff's own report of her physical activities in her Daily Activities Questionnaire dated September 3, 2002.  *Id.* at 18-19.[3]  Second, in concluding that Plaintiff should be "limited to simple routine unskilled tasks," the ALJ noted that Plaintiff had "no consistent treatment, if any, for depression," but nevertheless gave her the "benefit of doubt regarding her allegation of depression" and thus found that "she had moderate difficulties in concentration."  *Id.* at 18.  Finally, the ALJ's decision notes that Plaintiff testified that she "has to use the restroom every three or four hours each day," *id.* at 18, and also discusses Plaintiff's urinary issues in connection with the various medical reports in the record, *id.* at 17.  The ALJ's decision thus includes substantial evidence to support his conclusion that Plaintiff's work area should be in "close proximity to a restroom."

---

[3] Plaintiff correctly notes that the ALJ did not identify the evidence upon which he relied to support his finding that the Plaintiff "must avoid climbing ladders, ropes and scaffolds, but she can perform other postural movements such as stooping on an occasional basis." Pl.'s Resp. at 1; A.R. at 18.  However, Plaintiff does not argue that this finding is incorrect, and the particular finding is irrelevant because the ALJ's overall conclusion that Plaintiff could perform a reduced range of light work is consistent with Dr. Rico's RFC assessment, A.R. at 175-82, and Dr. Boice's report, *id.* at 133-34.

2.      *Failure to Consider Evidence*

Plaintiff next argues that the ALJ failed to address both a Medical Evaluation Report

prepared by Dr. Boice, who treated Plaintiff during 2001, indicating that Plaintiff had limited

capacities to walk, stand, stoop, kneel, lift, reach, push, and pul, as well as Plaintiff's testimony

during her hearing that she must self-catheterize every three to four hours and that the process

takes 30 minutes.  Pl.'s Mot. for J. of Rev. at 10-11.[4]  Based on a review of the ALJ's decision

and the evidence in the record, the Court finds that the ALJ appears to have properly considered

this evidence, in the proper exercise of his discretion, in assessing Plaintiff's RFC.

With respect to the report prepared by Dr. Boice, Defendant maintains that the report is

flawed because it is vague, unsupported, and a simple check box form entitled to little weight.

Def.'s Mot. for J. of Aff. at 12, n. 10.  Plaintiff's Response correctly notes that *post-hoc*

rationalizations are inherently deficient to support an ALJ's decision.  *See* Pl.'s Resp. at 3; *see*

*also Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 169, 83 S. Ct. 239, 246, 9 L.

Ed. 2d 207 (1962) (citing *Sec. & Exchange Comm'n v. Chenery Corp*, 332 U.S. 194, 196, 67 S.

Ct. 1575, 91 L. Ed. 1995 (1947)).  Nevertheless, the Court finds that the ALJ's decision indicates

that he considered Dr. Boice's report in the proper exercise of the ALJ's discretion.

While the ALJ's decision does not specifically refer to Dr. Boice's report, it does

---

[4] Dr. Boice's report includes a handwritten date of December 14, 2000.  A.R. at 133-34.
Plaintiff correctly points out that this date is clearly anachronistic because the report discusses
conditions and treatment that did not occur until the summer and fall of 2001, and suggests that
the report actually dates from December 14, 2002.  Pl.'s Mot. for J. of Rev. at 11, n. 12.  It is not
clear when Dr. Boice's report was actually prepared, however, as the record contains evidence
that Plaintiff was admitted to the Washington Hospital Center (where Dr. Boice was involved
with Plaintiff's treatment, *see* A.R. 147) on December 14, 2001, the report most likely dates from
December 14, 2001.

explicitly state that the ALJ's RFC assessment is based on "the entire record, including the testimony of the claimant and her witness and *exhibits of record not cited in this decision*." A.R. at 18 (emphasis added). Further, in explaining why he "gave great weight to" Dr. Rico's RFC assessment, the ALJ states that Dr. Rico's assessment "is supported by medical signs and laboratory findings and is consistent with the record when viewed as a whole including the findings on physical examination, treatment notes and progress reports from the claimant's treating physician and surgeon, Dr. Cosin." *Id.* at 19. The ALJ's decision also specifically discusses a number of reports prepared by Dr. Cosin between August 2002 and August 2003, *id.* at 16-17, 19, as well as Dr. Rico's RFC assessment, which is dated October 16, 2002, *id.* at 182.[5] As these reports are all more recent than the report prepared by Dr. Boice, the ALJ could reasonably, within the proper exercise of his discretion, have opted to accord greater weight to Dr. Cosin's reports and Dr. Rico's RFC assessment. Moreover, while Dr. Boice's report indicates that Plaintiff's physical capacities are limited by making a slash through each category of physical activity under the heading "limitation" (without providing a narrative to explain this conclusion), the report ultimately concludes that Plaintiff has a normal physical demand capacity and can return to work with modified duties. A.R. at 133–32. Dr. Boice's report is therefore consistent with the ALJ's RFC assessment and does not suggest that the RFC assessment lacks substantial evidence. *Cf. Martin v. Apfel*, 118 F. Supp. 2d 9, 15 (D.D.C. 2000) ("If there is one

---

[5] The Court notes that the record also contains another RFC assessment, prepared by Dr. Dolph Druckman on March 25, 2002, which indicates exertional limitations but states that Plaintiff "can do medium work at this time." A.R. at 149-56. Neither Plaintiff nor the ALJ's decision makes specific mention of this RFC assessment, and in any event the Court finds that it is not inconsistent with either of the other medical reports noted in the ALJ's decision or with the ALJ's RFC assessment.

fundamental principle guiding judicial review of an ALJ decision in a Social Security case, it is

that the ALJ may not ignore evidence *inconsistent* with his opinion without explanation.")

(emphasis added).

Plaintiff also complains that the ALJ failed to consider her testimony that she must self-

catheterize every three to four hours and that the process takes 30 minutes.  Pl.'s Mot. for J. of

Rev. at 11.  However, the ALJ's decision specifically notes two medical reports indicating

Plaintiff's need to self-catheterize frequently, *id.* at 17, and also includes Plaintiff's testimony

that she must use the restroom every three or four hours, feels uncomfortable using the restroom

outside of her own home, and has just gotten used to having an artificial bladder, *id.* at 18.

Indeed, the ALJ's opinion specifically determines that Plaintiff's testimony that she is unable to

use the restroom outside of her own home is not supported by the evidence of record because

nothing in the record indicates that Plaintiff "has a physical and/or mental problem that prevents

her from [doing so]."  *Id.* at 19.

Although the ALJ's decision does not mention Plaintiff's specific testimony that her self-

catheterization process takes 30 minutes, A.R. at 32, Plaintiff never alleged that the time it takes

her to self-catheterize constituted a separate physical limitation.  Rather, this testimony was

simply one aspect of Plaintiff's overall testimony regarding her concerns stemming from her self-

catheterization.  *Id.* at 32-33.  That the ALJ's opinion fails to specifically note the time it takes

Plaintiff to self-catheterize is therefore inconsequential because, as discussed above, the ALJ's

opinion indicates that he considered Plaintiff's self-catheterization in reaching his conclusion that

Plaintiff's work area should be in "close proximity to a restroom."  *Id.* at 18.

B.      *ALJ's Reliance on the Vocational Expert ("VE") Testimony*

Plaintiff also raises three complaints that the ALJ improperly relied upon the VE's testimony. First, Plaintiff asserts that the ALJ failed to inquire of the VE whether her testimony was consistent with the Dictionary of Occupational Titles ("DOT"). Pl.'s Mot. for J. of Rev. at 12-14. Second, Plaintiff argues that the occupations identified by the VE as appropriate for someone with Plaintiff's limitations are inconsistent with the DOT and that the ALJ failed to resolve this conflict as required. *Id.* at 14-17. Finally, Plaintiff asserts that the hypothetical question used to examine the VE was improper because it failed to include all of Plaintiff's restrictions. *Id.* at 17-18.

### 1.    Inquiry Regarding Consistency with the DOT

The Commissioner bears the burden under Step Five of the disability analysis to show that there are other job opportunities available to an individual with impairments such as those plaguing the claimant. *Brown v. Bowen*, 794 F.2d 703, 706 (D.C. Cir. 1986) (citing 20 C.F.R. §§ 404.1520(f), 416.920(f)). In determining whether the Commissioner has met this burden, the ALJ may rely on both the DOT and the testimony of a VE. *Brown v. Barnhart*, 408 F. Supp. 2d 28, 32 (D.D.C. 2006). However, where an "apparent unresolved conflict between VE . . . evidence and the DOT" arises, the ALJ "must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence." SSR 00-4P, *Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions*, 2000 WL 1898704, *2 (S.S.A. Dec. 4, 2000).

Plaintiff's Motion for Judgment of Reversal cites case law from other jurisdictions suggesting that an ALJ is required to specifically ask a VE about the possibility of conflicts between VE evidence and the DOT. Pl.'s Mot. for J. of Rev. at 13-14; *see e.g.*, *Teverbaugh v.*

*Comm'r of Soc. Sec.*, 258 F. Supp. 2d 702, 706 (E.D. Mich. 2003) (remanding in part because the

ALJ failed to inquire about conflict between VE evidence and the DOT).  However, persuasive

authority in this jurisdiction indicates that "'the mere failure to ask such a question cannot by

itself require a remand.'" *Brown v. Barnhart*, 408 F. Supp. 2d at 35 (quoting *Hodgson v.

Barnhart*, 2004 WL 1529264, at *2 (D. Me. 2004) and noting that "[s]uch an automatic right on

a purely technical ground where there is otherwise substantial evidence to support the SSA's

findings of fact would be contrary to the deference due the SSA"); *see also Boone v. Barnhart*,

353 F.3d 203, 206 (3d Cir. 2003) (same) (refusing to adopt a "general rule that an unexplained

conflict between a vocational expert's testimony and the DOT necessarily requires reversal").

Here, the ALJ's failure to specifically inquire into the possibility of inconsistency between VE

testimony and the DOT is likewise insufficient on its own to merit a remand; however, as

discussed below, the actual conflict between the VE's testimony and the DOT does constitute an

improper application of the law and requires a remand.  *Brown v. Barnhart*, 408 F. Supp. 2d at

35.

> ### 2.    *Hypothetical Question to the VE*

Plaintiff argues that the ALJ did not incorporate the limitations set forth in either Dr.

Boice's report or in Plaintiff's testimony regarding her self-catheterization in phrasing the

hypothetical questions he posed to the VE.  If the ALJ relies on VE evidence at Step Five in

assessing a claimant's ability to do other work, the ALJ "must accurately describe the claimant's

physical impairments in any question posed to the expert." *Butler*, 353 F.3d at 1005-06 (citing

*Simms*, 877 F.2d at 1050).  During Plaintiff's hearing, the ALJ asked the VE, Ms. Tanya

Hubacker:

Assume you have a person with the Claimant's same age, education, and work experience.  Also assume that the person can do no more than light exertional activity . . . the person should do no climbing of ropes, ladders, or scaffolds.  The person should do no posture movements such as stooping or bending on a frequent basis, only on an occasional basis.  The person also had moderate difficulty due to some bouts of depression, she has moderate difficulty in concentration, persistence and pace.  And this exhausts a person into being limited to performing non-complex, simple, routine, unskilled tasks.  And due to having to use the restroom . . . every three to four hours, the person should have . . . work areas having close proximity to a restroom.  Are there jobs such a person could perform?

A.R. at 38.  As described above, the ALJ's decision indicates that he considered both Dr. Boice's report and Plaintiff's testimony regarding her self-catheterization in formulating her RFC assessment.  As that RFC assessment mirrors the hypothetical question posed to the VE, the Court finds that the ALJ's hypothetical question properly contemplated all elements of Plaintiff's RFC.

    *3.*    *Actual Conflict with the DOT*

During Plaintiff's hearing, the VE identified three positions existing in significant numbers in the national economy – office helper (65,000 nationally and 1,800 locally), stock checker (40,000 nationally and 400 locally), and non-postal mail clerk (60,000 nationally and 700 locally) – that could be performed by an individual meeting the hypothetical description presented to her by the ALJ.  A.R. at 38-39.  Although the ALJ did not inquire as to inconsistencies between this testimony and the DOT, the VE volunteered that the jobs identified were "light, unskilled jobs according to the [DOT]," *id.* at 39, and that her testimony was "consistent with the [DOT]," *id.* at 40; *see also id.* at 20 (ALJ decision noting the consistency declaration).

However, Plaintiff correctly points out that the VE's testimony is, in fact, inconsistent

17

with the DOT.  According to the DOT, the position of "mail clerk" requires Level 3 Reasoning, which entails the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form," while the positions of "office helper" and "stock clerk" require Level 2 Reasoning, which entails the ability to apply commonsense understanding to carry out detailed but uninvolved written or oral instructions.  *See* Pl.'s Mot. for J. of Rev. Exs. A-C (*Dictionary of Occupational Titles*, §§ 209.687-026, 239.567-010, 299.667-014 (4th ed. 1991)).  Here, the judge specifically limited Plaintiff's capabilities to work involving only "simple, routine, unskilled tasks," A.R. at 20, which corresponds to a Level 1 Reasoning in the DOT, Pl.'s Mot. for J. of Rev. at 15 and Ex. D (DOT Scale of General Education Development).  The VE's testimony therefore conflicted with the DOT and the VE offered no explanation to resolve this conflict.  *See Brown v. Barnhart*, 408 F. Supp. 2d at 35.

Conflicts between VE evidence and the DOT are not necessarily fatal to an ALJ's decision.  *See* SSR 00-4p, 2000 WL 1898704, *2 ("Neither the DOT nor the VE . . . evidence automatically 'trumps' when there is a conflict.").  Rather, when a conflict arises, the impetus is upon the ALJ to resolve the conflict "by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information." *See id.*  Here, the ALJ's decision relies on and incorporates the VE's testimony in determining that Plaintiff "is capable of making a successful adjustment to work that exists in significant numbers in the national economy."  A.R. at 20-21.  However, as neither the VE nor the ALJ himself resolved the conflict between the DOT and the VE's testimony in this case, the Court cannot find that the ALJ's conclusion at Step Five was based on substantial evidence.  The ALJ's failure to resolve the conflict between the DOT and the VE evidence thus constitutes an

error in the application of the law, and the Court shall reverse and remand for resolution of the

narrow issue of the conflict between the DOT and the VE evidence.

   C.      *Failure to Develop the Administrative Record*

   Finally, Plaintiff complains that the ALJ failed to develop the administrative record, first

by not recontacting Plaintiff's treating physician to obtain evidence of her health record in the

nine months prior to the ALJ's decision, Pl.'s Mot. for J. of Rev. at 19, and second by failing to

order a consultative examination to evaluate Plaintiff's mental impairment, *id.* at 20.  Plaintiff is

correct that an ALJ generally has an affirmative duty "to investigate fully all matters and to

develop the comprehensive record requisite for a fair determination of disability."  *Poulin v.*

*Bowen*, 817 F.2d 865, 870 (D.C. Cir. 1987).  Plaintiff misunderstands this duty, however, in

suggesting that the ALJ was required to recontact Plaintiff's treating physician, Dr. Cosin, simply

because the last medical report in the record dated from nine months before the ALJ's decision.

Indeed, the very regulation to which Plaintiff cites for this purported duty on the part of the ALJ

indicates that the Commissioner will recontact a claimant's treating physician "when the

evidence we receive . . . is inadequate for us to determine whether you are disabled . . . ."  Pl.'s

Mot. for J. of Rev. at 19 (citing 20 C.F.R. § 404.1512(e) (2005)).  As discussed above, and as

Plaintiff herself concedes, Plaintiff's medical condition remained unchanged from October 9,

2002 through August 13, 2003, the date of the last visit of record.  Pl.'s Mot. for J. of Rev. at 5.

Plaintiff presents no evidence of any change in her medical condition after Dr. Cosin's August

13, 2003 report, which might render her previous medical records inadequate for the ALJ to

determine whether Plaintiff was disabled.  The age of Plaintiff's medical records does not, by

itself, suggest that the ALJ was required to further develop the administrative record in order to

fairly determine whether Plaintiff was disabled.

The ALJ's duty to develop the administrative record likewise did not compel him to order a consultative examination to evaluate Plaintiff's mental impairment.  During Plaintiff's hearing, both Plaintiff and her witness testified that Plaintiff did not leave the house a lot, experienced frequent crying spells, and had a bad attitude.  A.R. at 32-33, 35-36.  Contrary to Plaintiff's evidence, the medical reports in the record, which were prepared by a number of different physicians, did not suggest that Plaintiff suffered from depression.  In fact, Dr. Cosin's report of Plaintiff's October 19, 2002 visit notes that Plaintiff was alert, cooperative and oriented, with appropriate mood and affect and displayed no "depression, confusion, anxiety or disorientation." *Id.* at 209-10.  The evidence in the record therefore would not necessarily suggest to the ALJ that Plaintiff suffered from anything approaching clinical depression, which would make a consultative examination necessary to fairly evaluate whether Plaintiff was disabled.  Moreover, despite the fact that Plaintiff had "no consistent treatment, if any, for depression," the ALJ gave Plaintiff "the benefit of doubt regarding her allegation of depression," and took Plaintiff's depression into account in concluding that Plaintiff should be "limited to simple routine unskilled tasks."  *Id.* at 18.  As a result, there is no reason to believe a consultative evaluation actually would have allowed the ALJ to more fairly evaluate whether Plaintiff was disabled.

## IV: CONCLUSION

Based on the foregoing review of the relevant law and the administrative record, the Court finds that the Administrative Law Judge did not apply the correct legal standard when he denied Plaintiff's claim for Social Security Income Benefits.  The Plaintiff's Motion for Judgment of Reversal is therefore granted as to the issue of the conflict between the *Dictionary*

*of Occupational Titles* and the vocational expert testimony, the Defendant's Motion for

Judgment of Affirmance is denied, and the Court remands this case to the Social Security

Administration for further proceedings consistent with this opinion.  An appropriate Order

accompanies this Memorandum Opinion.


Date:   October 31, 2006


                                            _____/s/_____
                                            COLLEEN KOLLAR-KOTELLY
                                            United States District Judge